IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 15, 2014

## STATE OF TENNESSEE v. JAMES M. SMITH

**Appeal from the Circuit Court for Rutherford County**
**No. F68084      David M. Bragg, Judge**

**No. M2013-00733-CCA-R3-CD - Filed February 25, 2014**

A Rutherford County jury convicted the Defendant, James M. Smith, of driving under the influence ("DUI"), driving on a suspended, cancelled or revoked license, two counts of leaving the scene of an accident, and reckless endangerment. The trial court Defendant stipulated that he had been convicted of DUI on at least three previous occasions, and the trial court sentenced him as a Range III, persistent offender, to six years in confinement followed by four years on probation. On appeal, the Defendant contends that: (1) the trial court erred when it denied his pretrial motion to continue his case; (2) the prosecutor made improper comments during opening and closing arguments; (3) a distraction during the jury deliberation likely caused a hurried and potentially incorrect verdict; and (4) the evidence is insufficient to sustain his convictions. After a thorough review of the record and applicable authorities, we conclude no error exists in the judgment of the trial court. The trial court's judgments are, therefore, affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, PJ., and THOMAS T. WOODALL, J., joined.

Brock East, Murfreesboro, Tennessee, for the appellant, James M. Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Bradshaw, Assistant Attorney General; William Whitesell, District Attorney General; Jennings Jones and Matthew Westmoreland, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
## I. Facts

This case arises from a traffic accident in which the Defendant was involved on November 9, 2011. In relation to this accident, a Rutherford County grand jury indicted the Defendant for DUI, 9th offense.

## A. Motion to Continue

Before commencement of the trial but after a jury had been selected, the Defendant filed a motion to continue his case. The Defendant's attorney asserted that his motion was based upon the fact that on October 2, 2012, a week before trial, the State provided to the Defendant a video recording of the Defendant's arrest. The Defendant's counsel said that he and his client had looked over the video and, although they did not "necessarily object to its admissibility," they wanted the opportunity to further investigate the circumstances of the arrest based on their viewing of the video. As further support for the motion to continue, defense counsel stated that he had subpoenaed a witness, Steve Lance, but that Lance had not been located. Defense counsel told the court that Lance had been incarcerated for much of the time that the case was pending and that he had been released on October 1, 2012. The Defendant had informed defense counsel that he believed that he could now locate Lance.

The State informed the trial court that it was ready to proceed. It noted that the video had been in defense counsel's possession for more than a week. The State further noted that the jury had been sworn and that the only recourse was for the trial court to declare a mistrial.

The trial court found:

[The Defendant] was indicted in this case in June. A discussion date was held, at which time the Court was advised that Counsel was in possession of discovery and the State's offer. At a later date on the plea date, it was announced that [the Defendant] considering, and after discussion with Counsel, was prepared to go forward and set the case for trial, at which time this trial date was set.

We have currently placed the jury under oath. Jeopardy is attached. The Court was not made aware of any motions filed to continue the case until such time as after the jury had been sworn.

The Court would deny the motion based on the finding that, one, it's not timely; two, Defense has not put on any proof that the recording could be digitally enhanced, or that there's anything about the video that isn't displayed

accurately on the video other than the Defendant would like to have the opportunity to go out and visit the scene and measure some things. Which certainly he's had the opportunity to do since such time as he's had the opportunity to watch the video. It's my understanding [the Defendant] is on bond. And, so, he's had since whenever he watched the video until today to go out and look at the scene and measure things and review it based on the content of what was on the video. And the Court would deny that motion . . . .

Further, as to the availability of the witness, again, the Court has not been made aware of that until such time as after the jury has been placed under oath. However, there's been no testimony or proof offered that – other than an assertion that [the Defendant] believes he might be able to find this person. He certainly had time to keep up with and try to find this person prior to today and has not yet done that. And, so, the Court would deny that motion as well.

## B. Trial

At the Defendant's trial, the parties presented the following evidence: Paul Hulme testified that on November 9, 2011, he was stopped in his car at a red light at the intersection of Murfreesboro Road and Florence Road waiting for the light to turn green. Hulme said that the Defendant was driving a vehicle that hit the back end of his car while he was stopped. Hulme did not hear screeching brakes or tires on the road before the impact.

After the impact, the Defendant approached Hulme's window and apologized. He said, "I'm sorry I hit you, I couldn't stop." The Defendant then asked Hulme if he had been drinking, and Hulme replied, "no." The Defendant made no reference to someone else driving. Hulme said that he was taken from the scene to the hospital for treatment.

During cross-examination, Hulme said that the evening of the incident he was driving a full-sized, yellow van. He said that the van had a metal divider that prevented him from seeing out of his rearview mirror. Hulme said that, after the impact, he did not see the Defendant exit the vehicle but that the Defendant approached him on the driver's side of the van. He conceded that he would not have seen if there were multiple people exiting the Defendant's vehicle. Hulme said that it was dark at the time of the incident. Hulme said that there was "no chance" that the Defendant said "I'm sorry we hit you."

Hulme said that, when the Defendant apologized, Hulme told him that it was okay and that he was not hurt badly. Hulme said the Defendant then asked him if he had been

drinking, to which Hulme responded "no." A nurse then approached and asked Hulme if he was okay, if his neck or chest hurt, and then informed him an ambulance was en route to the scene. Hulme said that he did not speak with officers at the scene because they arrived after the ambulance.

James Wyatt, a Sergeant with the Murfreesboro Police Department, testified that he responded to a car accident involving an allegedly intoxicated driver. When he arrived at the scene, he learned that one of the drivers had left the scene of the accident, and the sergeant was directed toward the Defendant. Sergeant Wyatt saw the Defendant in a red and gray shirt across the street. The sergeant started to approach the Defendant, and the Defendant began walking away from him. The Defendant walked up the hill, got on the railroad tracks, and walked thirty to forty yards down the railroad tracks. The Defendant then walked down an embankment on the back side of an establishment called "City Limit Liquor." The Defendant went around toward the front of the store. Sergeant Wyatt asked the Defendant to stop, but he continued walking. As the Defendant was walking around the building, Sergeant Wyatt again asked him to stop. The sergeant caught up and made contact with the Defendant at the front door of the liquor store.

Sergeant Wyatt testified that, when he made contact with the Defendant, he asked the Defendant what he was doing. The Defendant responded that he was "going to get another drink before [the officer] took him to jail." The Sergeant obtained the Defendant's identification and took him back to the scene of the accident. Sergeant Wyatt informed the Defendant that another officer was coming to conduct field sobriety tasks, and the Defendant responded that he was not going to perform any field sobriety tasks and that "it wasn't his first rodeo."

During cross-examination, Sergeant Wyatt testified that eight minutes transpired between the time that he received the call about the accident and when he arrived at the accident scene. He agreed that "some things" about which he was unaware could have happened at the accident scene before he got there. The sergeant said that the truck involved in the accident, which was owned by the Defendant, was not moved from the accident scene. The sergeant conceded that the Defendant was not running and that he did not fall down as he was walking. Sergeant Wyatt agreed that the Defendant did not attempt to flee when he approached him and did not resist speaking with the sergeant.

Officer Brandon Brown, with the Murfreesboro Police Department, testified that he responded to a call regarding this accident. He made a diagram of the accident scene and created a "crash report." The accident involved four cars, and one of the drivers of the cars left the accident scene. Two other drivers were transported to the emergency room. Officer

-4-

Brown testified that the "box truck" involved in the accident, and which was the cause of the accident, was registered to the Defendant.

During cross-examination, Officer Brown testified that he did not speak with the Defendant during his investigation of the accident scene. Officer Brown said that he noted on his report that the Defendant's truck had "more than $400" worth of damage. He testified that the damage was to the front of the Defendant's truck. He conceded that there could have been damage to the rear of the truck that he did not notice.

John Harrison, a Special Agent Forensic Scientist with the Tennessee Bureau of Investigation ("TBI"), testified as an expert in forensic toxicology. He testified that he tested the sample of the Defendant's blood. The ethyl alcohol level was 0.23 gram percent. Agent Harrison testified that, in his opinion, a person was "impaired" when his or her blood alcohol level reached "the .08 level." The Defendant's blood alcohol level, he noted, was three times this amount.

For the Defendant, James Shannon Hodge testified that around the time of this accident he was living with a woman named Ann, her son Jeffery, and a man named "Steve Lance." Mr. Lance, he said, was friends with and worked with the Defendant. Mr. Hodge testified that Mr. Lance drove the Defendant's truck and, because the Defendant did not have a valid license, the Defendant paid Mr. Lance to drive him in his truck. Mr. Hodge testified that he not seen Mr. Lance since the day of the accident. He said Mr. Lance left without paying the money he owed Mr. Hodge for lodging, and he left many of his belongings.

During cross-examination, Mr. Hodge testified that he never notified authorities that they had wrongly arrested the Defendant and that Mr. Lance was driving the Defendant's truck. He conceded that he and the Defendant were friends and that he did not want the Defendant to go to jail.

During redirect examination, Mr. Hodge testified that he was not present at the accident scene and cannot be sure who was driving. He, however, knew that Mr. Lance had left that morning driving the Defendant's truck.

During further cross-examination, Mr. Hodge agreed he had been previously convicted of burglary and felony possession of a Schedule II substance.

Tom Anderson testified he had known the Defendant for between fifteen and eighteen years. Mr. Anderson, who worked on trucks for a living, was familiar with the Defendant's large work truck. Mr. Anderson said that the Defendant's truck was towed to his place of business, after which Mr. Anderson salvaged the parts from it. Before doing so, he inspected

the truck for damage, and he recalled that there was damage to the front end, the windshield, and the back cab. During cross-examination, Mr. Anderson testified that he had worked on the truck "a couple of months" before the accident, and he therefore did not know when the damage to the truck that he had noted was incurred.

Based upon this evidence, the jury convicted the Defendant of Driving Under the Influence ("DUI"). The parties had previously stipulated that the Defendant had been convicted on at least three previous occasions of DUI. The trial court sentenced the Defendant as a Range III, persistent offender, to six years in confinement followed by four years on probation.

## II. Analysis

On appeal, the Defendant contends that: (1) the trial court erred when it denied his pretrial motion to continue his case; (2) the prosecutor committed prosecutorial misconduct during argument; (3) a distraction during the jury deliberation likely caused a hurried and potentially incorrect verdict; and (4) the evidence is insufficient to sustain his conviction.

### A. Pretrial Motion

The Defendant contends that the trial court erred when it denied his motion to continue the case to "review . . . the specific locations and persons located at the accident site." In support of his contention, the Defendant notes that eight days before trial the State had disclosed the videotape recording of the Defendant's arrest, which did not give him adequate time to investigate the case. The State counters that the Defendant has failed to show that the trial court abused its discretion when it denied his motion for a continuance, rendering the issue without merit. We agree with the State.

The decision to grant a motion for a continuance is left to the trial court's discretion, and a denial of the requested continuance will not be overturned on appeal absent a clear showing of an abuse of that discretion. *State v. Russell*, 10 S.W.3d 270, 275 (Tenn. Crim. App. 1999) (citing *State v. Melson*, 638 S.W.2d 342, 359 (Tenn. 1982); *Baxter v. State*, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973)). We will reverse the denial of a continuance only if the trial court abused its discretion and the defendant was prejudiced by the denial. *State v. Thomas*, 158 S.W.3d 361, 392 (Tenn. 2005). "An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted." *Id.* (citing *State v. Hines*, 919 S.W.2d 573, 579 (Tenn. 1995)).

In denying the Defendant's motion, the trial court found that the motion was not timely because the Defendant raised the motion for the first time after the jury had been sworn and jeopardy had attached. The trial court further found that the Defendant had not shown how he was prejudiced. The trial court found that the Defendant, who was on bond, could have gone to the scene and taken any measurements he wanted after viewing the video. The Defendant has not proven that the trial court abused its discretion by denying the continuance. On appeal, he does not state how, if granted, a continuance would have assisted him in presenting his case. He states only that he would have had more time to review "specific locations" and "persons located" at the accident site. This bare allegation does not suffice to show that the outcome of his trial would have been different had the trial court granted the motion to continue. He is, therefore, not entitled to relief on this issue.

## B. Prosecutorial Misconduct

The Defendant next contends that the prosecutor committed misconduct during closing arguments. He asserts that, after the trial began and during opening statements, the State's attorney represented that the proof would show that the Defendant stated, "I'm not going to give that damn D.A. that much to work with" when asked to submit to a field sobriety test. No witness at trial testified to this. The Defendant further takes issue with the State's attorney comparing the existence of Steve Lance to that of "Leprechauns and Fairy God Mothers." Finally, the Defendant argues that the State's argument that "everybody at the scene says this man was driving except him" was also improper. The State counters that the Defendant has waived this issue by failing to make a contemporaneous objection at trial. The State further contends that the Defendant has failed to show that the statements were improper or that they affected the outcome of the trial.

The Defendant failed to object at the trial to any of the prosecutor's statements. Typically, when a prosecutor's statement is not the subject of a contemporaneous objection, the issue is waived. Tenn. R. Crim. P. 33 and 36(a); *see also State v. Thornton*, 10 S.W.3d 229, 234 (Tenn. Crim. App. 1999); *State v. Green*, 947 S.W.2d 186, 188 (Tenn. Crim. App.1997); *State v. Little*, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992) (stating that the failure to object to the prosecutor's alleged misconduct during closing argument waived later complaint). The Defendant raised this issue in his motion for new trial, and the trial court addressed the issue on its merits. Accordingly, we will also review the issue on its merits.

In general, the scope of opening and closing arguments is subject to the trial court's discretion. Counsel for both the prosecution and the defense should be permitted wide latitude in arguing their cases to the jury. *State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998). Argument, however, must be temperate, "predicated on evidence introduced during the trial," and relevant to the issues being tried. *State v. Keen*, 926 S.W.2d 727, 736 (Tenn.

1994). Thus, the State must not engage in argument designed to inflame the jurors and should restrict its comments to matters properly in evidence at trial. *State v. Hall*, 976 S.W.2d 121, 158 (Tenn. 1998).

When a reviewing court finds improper argument, five factors should be considered to determine whether a prosecutor's improper conduct could have affected the verdict to the "prejudice of the defendant." *State v. Philpott*, 882 S.W.2d 394, 408 (Tenn. Crim. App. 1994). The factors are: (1) the conduct complained of in light of the facts and circumstances of the case; (2) the curative measures undertaken; (3) the intent of the prosecutor in making the improper remarks; (4) the cumulative effect of the improper conduct and any other errors in the record; and, (5) the relative strength or weakness of the case. *Id.* (citing Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)); *see also State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003).

In *State v. Goltz*, this Court set out the following five recognized areas of prosecutorial misconduct related to argument of counsel:

1. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

2. It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. *See State v. Thornton*, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999); *Lackey v. State*, 578 S.W.2d 101, 107 (Tenn. Crim. App. 1978); Tenn. Code of Prof'l Responsibility DR 7–106(c)(4).

3. The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury. *See Cauthern*, 967 S.W.2d at 737; *State v. Stephenson*, 878 S.W.2d 530, 541 (Tenn. 1994).

4. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict. *See Cauthern*, 967 S.W.2d at 737; *State v. Keen*, 926 S.W.2d 727, 736 (Tenn. 1994).

5. It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

111 S.W.3d at 6.

In the case presently before us, we will address each contention in turn. The Defendant first takes issue with the prosecutor's statement that the proof would show that the Defendant stated, "I'm not going to give that damn D.A. that much to work with" when law enforcement officers asked him to submit to a field sobriety test. This statement occurred during opening arguments. During the trial, Officer Brown testified that, when the Defendant was asked to submit to a field sobriety test, he responded that "he wasn't going to give the D.A. anything to work with." While the use of the word "damn" was gratuitous, the prosecutor's presentation of the facts was substantially the same as the facts to which Officer Brown testified. Further, the prosecutor corrected himself during closing argument saying, "I misspoke this morning. I used the word damn. That damn D.A. That was wrong. That's why proof comes from the witness box, proof comes from the video tape you saw. Proof doesn't come from me." The trial court found that there was "no prejudice towards the [D]efendant regarding the statements made by the prosecutor, as those statements were never presented at trial." We conclude that, under these facts, the Defendant has not shown that the prosecutor's statement prejudiced him.

The Defendant next contends the prosecutor committed misconduct when the prosecutor compared the existence of Steve Lance to that of "Leprechauns and Fairy God Mothers." These statements occurred during closing arguments. The trial court found, "The State suggested the [D]efendant had made no efforts to locate the driver, Steve Lance, nor had the [D]efendant disclosed the name of the driver until trial. [The] Defendant asserts a subpoena was previously issued for Steve Lance and that the State should have acknowledged that information. . . . The Court was unable to locate the above mentioned subpoena issued for Steve Lance." After reading the closing argument in its entirety, we conclude the trial court did not err when it denied the Defendant's motion for new trial on this issue. The prosecutor's theory of the case was that the Defendant had fabricated his story that a "Steve Lance" was driving his truck at the time of the accident. Steve Lance was not called as a witness, and the trial court found that the Defendant had not issued a subpoena for Steve Lance. We conclude the prosecutor's argument was not improper.

Lastly, the Defendant contends that the prosecutor's argument that "everybody at the scene says this man was driving except him" was also improper. As the State points out in its brief, Mr. Hulme testified that the Defendant approached him on the driver's side of Mr. Hulme's vehicle and apologized for hitting him saying he "couldn't stop." Sergeant Wyatt testified during cross-examination that a witness at the scene pointed out the Defendant as being the driver of the Defendant's truck, which was the cause of the accident. A witness at the scene provided the sergeant with a description of the driver, that description matched the Defendant, and, based upon this, the sergeant began following the Defendant on foot.

We conclude that the prosecutor's argument was not improper considering the evidence presented during the trial. The Defendant is not entitled to relief on this issue.

### C. Jury Deliberation

The Defendant contends that a distraction during the jury deliberation likely caused a hurried and potentially incorrect verdict. He notes that the jury was sent for deliberations at the end of a "long day" and that, a short time after they began deliberating, a "loud/unnerving" fire alarm began sounding in the judicial building. The Defendant contends that the "sanctity of the jury was disturbed to such an extent that there is no assurance of a fair and reasoned consideration." The Defendant offers no citation to any legal authority to support his argument. The argument is, therefore, waived. Tenn. R. Crim. App. 19(b); Tenn. R. App. P. 27(a)(7).

### D. Sufficiency of Evidence

The Defendant next contends that the evidence is insufficient to sustain his convictions for DUI, 4th offense or greater and the "associated charges." He bases his claim on the fact that there was insufficient proof to show that he was the driver of the vehicle involved in the accident in this case. The State asserts that, when viewed in the light most favorable to the State, a reasonable juror could conclude that the Defendant was the driver of the vehicle and committed the offenses.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

To prove DUI, the State must prove beyond a reasonable doubt that a defendant drove or was "in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys . . . while . . . [u]nder the influence of any intoxicant[.]" T.C.A. § 55-10-401(a)(1) (2008).

The proof, viewed in the light most favorable to the State, proves that a truck registered to the Defendant was involved in a collision, rear ending a truck and causing a four-car accident. Shortly after the accident, the Defendant approached Mr. Hulme and apologized for hitting him explaining he could not stop. A witness at the scene provided a description of the driver of the Defendant's truck, who had left the scene of the accident. The description of the driver matched the Defendant's description. In the videotape of the

Defendant's refusal to take field sobriety tests, the Defendant admits that he was alone at the time of the accident. We conclude that this evidence is sufficient to prove that the Defendant was driving at the time of the accident. Further, toxicology reports prove that he was intoxicated at the time of the accident. A rational jury could have found the essential elements of the offense beyond a reasonable doubt. The Defendant is not entitled to relief on this issue.

### III.  Conclusion

Based on the aforementioned reasoning and authorities, we conclude theat no error exists in the judgments of the trial court. The trial court's judgments are, therefore, affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE